UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT BARTLETT and <br> KEVIN BOYER, <br><br> Plaintiffs, <br><br> v. <br><br> ROCK TOWNSHIP AMBULANCE <br> DISTRICT, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:10CV02344 AGF <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment (Doc. No. 54). Plaintiffs Kevin Boyer and Scott Bartlett, two former employees of Rock Township Ambulance District (the "District"), brought this action under 42 U.S.C. § 1983, claiming that their First Amendment rights were violated when they were terminated from their employment as paramedics with the District in retaliation for engaging in protected speech. They name as Defendants the District, the Paramedic Chief of the District (Margie Sammons), and six members of the District's Board of Directors. Specifically, Plaintiffs allege that they were terminated because they complained to Defendants and outside law enforcement agencies that the District mismanaged taxpayer funds by failing to remove each of their ex-spouses from the District's health insurance plan. Defendants argue that they are entitled to summary judgment because Plaintiffs cannot establish that they engaged as citizens in speech involving a matter of public concern, as required for a First Amendment retaliation claim.

For the reasons set forth below, the motion for summary judgment shall be granted.

## BACKGROUND

For the purposes of the motion under consideration, the record establishes the following.

In November 2005, while Boyer was employed with the District, he got divorced. This was a well-known fact at the District. Whether by fault of Boyer or the District, his ex-wife remained on his health insurance plan provided by the District. On January 4, 2010, after Boyer attempted to put his new wife on the health insurance plan, the District notified him that it was conducting an investigation into his failure to remove his ex-wife from the health insurance plan after he got divorced and requested that he provide a written response by January 15, 2010.

By letter dated January 6, 2010, Boyer explained that he thought he had followed proper procedures for removing his ex-wife from the plan, and that he never tried to hide his divorce or to purposely keep his ex-wife on the plan. Boyer spoke to his Union, which retained counsel on his behalf. (Doc. No. 52.) Counsel sent a letter dated January 15, 2010, to the District, setting forth the reasons why Boyer believed that his ex-wife had been removed from the health insurance plan. The letter asserted that it was "glaringly obvious that the individuals responsible for watching over the District's expenditures" were at fault for not removing Boyer's ex-wife from the health insurance plan, and that it was "outrageous for the District's staff to now attempt to blame this waste of funds on [Boyer], when the fault lies with it."

Counsel's letter was received on January 18, 2010. The District terminated Boyer on January 19, 2010, effective immediately. On January 22, 2010, Boyer filed a grievance appealing his termination. The grievance was denied and Boyer appealed the denial on February 1, 2010. On February 19, 2010, the District denied the appeal. On February 24, 2010, Boyer, by and through counsel, sent correspondence to the Jefferson County Sheriff's Department, the Missouri State Auditor, the Jefferson County Prosecutor's Office, and the FBI, reporting on the District's lack of oversight on its expenditures for insurance premiums, resulting in wasting taxpayer money on premiums for Boyer's ex-wife, and the District's attempt to cover this up by firing Boyer in retaliation for his uncovering the District's lack of oversight.

By fax to the District dated February 25, 2010, Boyer's counsel renewed the request that Boyer be reinstated in light of another District paramedic whom counsel also represented allegedly having been told that day that she was blameless for her ex-husband remaining on her health insurance plan after her divorce. The request for reinstatement was denied.

Plaintiff Bartlett learned that his ex-wife had not been removed from the District's health insurance plan when he received an Explanation of Benefits on April 5, 2010 -- over two years after his divorce. Bartlett approached Sammons about the issue and Sammons directed him to fill out the paperwork to remove his ex-wife. Bartlett did so on April 7, 2010. He testified that he was concerned that his employment might be terminated based on the fact that Boyer had been terminated. The same attorney who had

been retained to represent Boyer was retained to represent Bartlett. By letter to the District dated April 14, 2010, counsel explained why Bartlett believed that his ex-wife had been removed from the health insurance plan. The letter also accused the District of "continued mismanagement of taxpayer funds" and requested, on behalf of Bartlett, an investigation into "why the District has continued to waste taxpayer funds to pay health insurance premiums for his former spouse." The letter closed as follows:

> Please be advised that Paramedic Bartlett expects the District to refrain from taking any disciplinary action against him as a result of the District's own failure to process his ex-wife's request to be removed from the District's health insurance. Further, any disciplinary action taken against Paramedic Bartlett as a result of his revealing the District's illegal expenditure of funds will be considered to be retaliation for his whistleblowing activities and he will seek all legal remedies available to him against the District.

(Doc. No. 61-48.)

Thereafter, Sammons notified Bartlett of an investigation into the matter and requested a written statement from him. Bartlett provided a written memorandum dated June 2, 2010, that outlined the reasons he believed that he and/or his ex-spouse had done everything that was required to have his ex-spouse removed from the health insurance plan. The memorandum closed as follows:

> In conclusion, the facts of the matter and the contents of the District's files do not show I intended to keep my former spouse on the District's health insurance, or that I misled the District into keeping her on its health insurance coverage. What did happen was that a mistake was made, but not by me.

(Doc. No. 61-33.)

4

In late June 2010, the District told Bartlett that he would be terminated for failing to file a timely report of change of marital status unless he agreed to pay the District restitution in the amount of approximately $7,000 and sign a release releasing the District from all liability with respect to the matter. On July 13, 2010, Bartlett, by and through counsel, sent correspondence to the entities to whom counsel had written with respect to Boyer on February 24, 2010, making representations on Bartlett's behalf similar to those he had made with respect to Boyer. On July 15, 2010, Bartlett informed the District that he would not sign the release, and on July 17, 2010, the District terminated him.

## **ARGUMENTS OF THE PARTIES**

Defendants argue that they are entitled to summary judgment because the evidence demonstrates that Plaintiffs' self-interest in saving their jobs outweighed any purported interest they had in commenting as citizens on matters of public concern, and therefore, their speech criticizing the District is not entitled to First Amendment protection. In addition, Defendants point out with respect to Boyer that he did not make any complaint about mismanagement of taxpayer funds by the District until after he was terminated on January 19, 2010.

Plaintiffs argue that the misuse of public funds is a matter of public concern and that the evidence shows that their primary concern in criticizing Defendants' failure to remove Plaintiffs' ex-spouses from the District's health insurance plan was to speak as citizens on a matter of public concern. Boyer asserts that because he did not believe he

5

was being considered for discipline before he wrote the two statements in January 2010, the statements could not have been written to save his job as Defendants maintain. Boyer also points to the correspondence critical of Defendants that was sent to outside law enforcement entities "while his appeal for reinstatement was still pending." Bartlett asserts that in making his written statements critical of Defendants and in making the decision to not accept the agreement offered to him in lieu of termination, his motive was to bring to light Defendants' misuse of public funds, and not to keep his job.

## **DISCUSSION**

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011) (citation omitted). "Credibility determinations and the weighing of the evidence are jury functions, not those of a judge, and the court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the non-moving party." *Id.*

To establish a retaliatory discharge claim under the First Amendment, a plaintiff must prove that he engaged in protected activity, and that his activity was a substantial or motivating factor in his employer's decision to terminate him. *Id.*; *McCullough v. Univ. of Ark. for Med. Sciences,* 559 F.3d 855, 865 (8th Cir. 2009) (citation omitted). If a plaintiff meets this burden, the burden shifts to the employer to show that it would have taken the same action regardless of the plaintiff's speech activities. *Id.*

6

A public employee engages in speech protected under the First Amendment if he speaks "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). A public employer that retaliates against "speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," and thus does not violate the First Amendment. *Id*. at 421-22. The determination is a two-step process by which the court must decide both whether the employee spoke as a citizen and whether the speech was on a matter of public concern. *Id.* (holding that a government employee did not act as a citizen when speech was made, but not challenging the Circuit Court's finding that the speech addressed a matter of public concern); *McGee v. Pub. Water Supply, Dist. #2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 920-21 (8th Cir. 2006) (explaining that no First Amendment protection arises if a government employee speaks only on matters of personal interest, as opposed to "matters that are of concern to the general public," or speaks on matters of public interest but does so in the course of his employment duties and not as a citizen).

If the employee fails to satisfy both of these prongs, he has no First Amendment cause of action based on his employer's reaction to the speech. *Garcetti*, 547 U.S. at 418. If, on the other hand, the employee demonstrates that he spoke as a citizen, "that is, outside the scope of employment[,]" on matters of public concern, the First Amendment offers protection if his speech survives the balancing test of *Pickering v. Board of Education of Township High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968).

7

*McGee*, 471 F.3d at 920.  *Pickering* requires a court to determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."  *Garcetti*, 547 U.S. at 418.

"Employees in some cases may receive First Amendment protection for expressions made at work."  *Garcetti*, 547 U.S. at 421 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979) (holding that constitutional freedom of speech is not "lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public")).  In addition, the First Amendment "protects some expressions related to the speaker's job."  *Id.; see also Dahl v. Rice County, Minn.*, 621 F.3d 740, 744 (8th Cir. 2010).

Whether a public employee spoke as a citizen on a matter of public concern is a matter of law for the court and "must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Dahl,* 621 F.3d at 744 (citation omitted.)  The Eighth Circuit has explained that when an employee's speech includes matters of both public concern and personal interest, a court

> must analyze the content, form, and context of the speech to determine whether the speaker was acting primarily as a concerned citizen or as an employee.  If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, her speech is not protected, even if the public have an interest in the topic of the speech.

*Bailey v. Dep't of Elementary & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006) (citing *Schilcher v. Univ. of Ark.,* 387 F.3d 959, 963 (8th Cir. 2004)).

Here, viewing the facts in the light most favorable to Plaintiffs and looking at the

8

record as a whole, the Court concludes that Plaintiffs' statements to Defendants are not entitled to First Amendment protection.  While, to be sure, misuse by public entities of public funds, and "criticism of government officials and [their] polic[ies]" are matters of public concern, *see, e.g., Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 899 (8th Cir. 2007), Plaintiffs' statements to Defendants were "mostly intended to further [their] private interests rather than to raise issues of public concern."  *See Bailey*, 451 F.3d at 519-20 (holding that a state employee did not engage in protected speech by expressing disagreement with a supervisor about department procedures and by writing to management complaining about a supervisor and procedures); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (surveying post-*Garcetti* case law and concluding that complaints raised up the chain of command in a public workplace are often viewed as being pursuant to one's job duties while external communications in which a public employee raises concerns to persons outside the workplace are "ordinarily not made as an employee, but as a citizen"); *Casey v. W. Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1329-33 (10th Cir. 2007) (holding that superintendent of school district spoke as a district employee when she conveyed to board her concern about the district's lack of compliance with federal regulations governing a program, when she instructed a subordinate to contact federal authorities about illegal enrollments in the program, and when she related to board members her concerns about the board's failure to comply with state open meetings law; but she spoke as a private citizen when she wrote to the state's attorney general about alleged violations of state open meetings law); *cf. Jackler v. Byrne*, 658

F.3d 225, 239-40 (2d Cir. 2011) (holding that a police officer's refusal to make a false report about an incident of police brutality he had witnessed was a matter of public concern, "rather than an effort to further some private interest," and that the officer was acting as a citizen rather than an employee, as there was no indication that he had any personal interest in describing the conduct in question).

While the matter is not wholly free from doubt, the Court concludes that Plaintiffs' internal statements to Defendants in response to Defendants' request for a response to an internal investigation involving the improper retention of their ex-spouses on the District's health insurance plan was not protected First Amendment speech. Rather, they were statements primarily intended to further Plaintiffs' private interests. Indeed, there is little to suggest otherwise in the case of Boyer. The Court further notes that in *Bailey*, the Eighth Circuit, in finding that the plaintiff's statements at an internal meeting and in an internal letter were not protected speech, twice noted that the statements at issue were not addressed to the public. *Bailey*, 451 F.3d at 518-19, 520.

The statements by Plaintiffs to outside parties, such as the Jefferson County Sheriff's Department, were made by Plaintiffs as citizens. However, in Boyer's case, they were made after the termination decision was made, and thus cannot form the basis of a retaliation claim. It does not avail Boyer to assert that this speech came while his renewed request for reinstatement was pending. Holding otherwise would allow any public employee to "constitutionalize" any statement made as an employee by making public statements on the matter after an adverse employment action, and then requesting

reconsideration by his employer of the adverse action.

Nor does it avail Bartlett to argue that his public statements were made before he was actually terminated, because they were made after he was told that he would be terminated unless he agreed to pay restitution and to sign a release. To be sure, the First Amendment protects speakers from threats of punishment that are designed to discourage future protected speech. *See, e.g., Farley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (explaining that a First Amendment retaliatory discharge claim is a subset of the original prohibition against prior restraint of protected speech). But here, restitution was a condition to his not being terminated, a condition that does not implicate the First Amendment, and a condition that Bartlett refused.

The cases relied upon by Plaintiffs, such as *Kincade v. City of Blue Springs*, 64 F.3d 389 (8th Cir. 1995), are either inapposite or pre-date *Garcetti*.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**. (Doc. No. 54.)

**IT IS FURTHER ORDERED** that all remaining motions are dismissed as moot.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of April 2012.

11